THE FRED E. SANDER.

(District Court, D. Washington, N. D. June 27, 1899.)

1. SEAMEN—RELEASE OF WAGES—EXECUTION UNDER CONSTRAINT.

A release of wages earned by a seaman, executed while on board the vessel on a voyage, and imprisoned in irons, on his being released from imprisonment and discharged will be presumed by a court of admiralty to have been given under constraint, and will not be given effect.

2. SAME—DAMAGES FOR ABUSIVE TREATMENT.
    Libelant, while' cook on a schooner, during an altercation was assaulted
    by the captain, and, on freeing himself, seized an ax, with which he in-
    flicted a wound on ·the captain's hand. He was seized and placed in irons
    by the captain's order, and thrown down a hatch, where he was chained
    and kept a prisoner for about 10 days, and then released and discharged.
    He was handled with unnecessary roughness, by which one of his ribs
    was broken, and he received other injuries, none of which were given any
    attention or care during his imprisonment, and from which he was disa-
    bled and suffered for some time thereafter. *Held*, in a suit in rem to re-
    cover wages and damages, that while, under admiralty rule 16, he could
    not recover for the assault and battery, he was entitled to his wages, and
    damages for the failure to give him proper care after injury, but, in view
    of his being also in fault, such damages would be limited to $200.

Suit in rem against the schooner Fred E. Sander to recover wages
earned as cook on a voyage from Seattle to St. Michael, and for
damages for abusive treatment and neglect while the libelant was in
a disabled and suffering condition at St. Michael. On final hearing.

Metcalfe & Jurey, for claimant.
Pratt & Riddle and James Kiefer, for libelant.

HANFORD, District Judge. The story of this case, as I have gath-
ered it from the testimony, is as follows: The libelant signed ship-
ping articles at the port of Seattle on the 3d day of June, 1897, to
serve as cook on board the Fred E. Sander on a voyage to St. Michael
and return to Puget Sound, at the agreed rate of wages of $45 per
month. The libelant is quite an old man, and past the age for doing
the ordinary work of an able seaman; but he is a competent cook,
and performed his duties in a satisfactory manner on the passage
from Seattle to St. Michael. Besides the complement of officers and
men, there was on board the vessel on said voyage the captain's
wife and an infant child and a nursemaid. It was the custom on the
vessel to serve two breakfasts in the cabin,—the first for the mates
and the nursemaid, and the second for the captain and his wife.
One morning, while the vessel was at St. Michael, the nursemaid was
late in coming to breakfast, and the mates took advantage of her
tardiness by eating all of the breakfast served for the three persons.
The cabin boy informed the libelant of this, and that the maid wished
to have a second breakfast prepared for her, to which the libelant
replied that a breakfast especially for her could not be served, and
that she would have to take her breakfast with the captain and his
wife; and her breakfast was served in the manner he proposed, but
the maid informed the captain that the libelant had refused to cook
meals for her in the ship. Acting upon this information, the captain
went forward, and spoke to the libelant in an irritable manner, and
the libelant answered him insolently; no doubt feeling exasperated by
the captain's manner towards him after he had actually prepared two
breakfasts for the maid. The captain attempted to punish his inso-
lence by assaulting him, and a scuffle ensued in the galley. The libel-
ant, as soon as he could get free from the captain's grasp, sprang
out of the galley and picked up an ax, with which he aimed a blow
at the captain, viciously inflicting a severe wound upon the captain's
hand, and then attempted to escape from the consequences by going

aloft in the rigging. The captain ordered the mates to put him in irons, and then went into the cabin. The mates brought the libelant to the deck, put handcuffs on him, and, handling him very roughly, conducted him to the afterpart of the vessel, where they threw him down the lazarette hatch; and by the captain's orders he was chained to a stanchion, and imprisoned in the lazarette for about 10 days. He was, however, allowed certain liberty for exercise and necessary purposes. He was thrown into the lazarette with unnecessary force, and probably received several kicks or blows, whereby one of his ribs was broken, and he sustained other injuries more or less severe. While in the lazarette he was cramped for want of sufficient room, and suffered great discomfort, and no attention whatever was paid to the treatment of his wounds. On the 20th day of July, 1897, with his own consent, he was released from imprisonment, and discharged from the service of the ship, and engaged as a mariner on board of another American vessel then at St. Michael; but being weak and sore, and too old to perform the duties of a seaman with safety to himself, he did not go to sea, but secured a position as cook on board a river steamer running on the Yukon river. He was then able to superintend the cooking department in said steamboat, but was unable to do hard work for several weeks. On the steamboat he was for the first time put in bandages, and received proper treatment for his broken rib. No wages were paid to him for his services on board the Fred E. Sander, and at the time of his release from imprisonment he signed a paper relinquishing his claim for wages.

I hold that the libelant's written agreement to forfeit his wages is not binding upon him, for the reason that, considering his situation at the time, a presumption arises that he was constrained to sign the agreement, or suffer further imprisonment, which he had every reason to believe would continue until the return of the vessel to Puget Sound. Courts of admiralty pay no respect to agreements of seamen to forfeit their wages, extorted from them at sea, or in places where the power of the ship's master is supreme.

The libelant cannot recover in this suit any damages for assault made upon him and injuries inflicted by the violence of the captain and his subordinate officers, because admiralty rule 16 does not permit a suit in rem to recover damages for such injuries; but, after the injuries had been inflicted, he was entitled to humane treatment, and to be cured at the expense of the ship. For his additional unnecessary suffering, and the neglect of the captain to see that he had such proper treatment for the cure of his injuries as, under the circumstances, might have been afforded, he is entitled to some compensation. If he were without fault in the matter, his claim for substantial damages would be entirely just, and I would unhesitatingly award to him more liberal recompense than the amount which I have fixed as proper under all the circumstances which I have detailed. The libelant is himself blameworthy, and to a very considerable extent responsible for his own injuries, by reason of his unjustifiable conduct—First, in offering insolence to the captain when he was spoken to concerning his duties; and, second, in retaliating for an assault which had been made upon him by making a murderous as-

sault upon the captain with a deadly weapon. The captain's ill usage was sufficient to provoke him to anger, but the circumstances were not such as to justify him in resorting to the use of a dangerous weapon in self-defense, because he had no reason to believe that he was in imminent danger of suffering great bodily harm, and he had not retreated to the. wall. Considering all the circumstances shown by the evidence, it is my opinion that justice will be done by awarding to the libelant wages at the rate of $45 per month for a period of three months, and damages for neglect to treat him properly after his injuries, in the sum of $200 and costs. A decree will be entered in accordance with this opinion.